UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DENISE JOHNSON,                              )
                                             )
            Plaintiff,                       )
                                             )
v.                                           )        Case No. 4:19-cv-02282-SEP
                                             )
CITY OF LEADINGTON, et al.,                  )
                                             )
            Defendants.                      )

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants City of Leadington, Gary McKinney, Cassie Schrum, Mark Bishop, and Debra Matthews's Motion to Dismiss (Doc. [31]) and Defendants Dustin Winick and Casie Braddy's Motion to Dismiss (Doc. [33]).[1]  Both motions are fully briefed.  For the reasons set forth below, Winick and Braddy's Motion to Dismiss (Doc. [33]) will be granted in full, and the Motion to Dismiss filed by the City and McKinney, Schrum, Bishop, and Matthews (Doc. [31]) will be granted in part and denied in part.

### Facts and Background[2]

Plaintiff Denise Johnson filed her original complaint on August 1, 2019.  Defendants filed a motion to dismiss on September 25, 2019.  On November 4, 2019, Plaintiff filed an amended complaint.  In response, the City and four of the individual defendants filed one motion to dismiss, and the remaining two individual defendants filed a separate motion to dismiss.

---

[1] Collectively, "Defendants."  The six natural person defendants will be referred to collectively as the "Individual Defendants."
[2] The facts contained herein are taken from the allegations set out in Plaintiff's Amended Complaint.  The Court assumes their truth for the purpose of this Memorandum and Order.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

Defendants in this case include the City of Leadington ("City"); Dustin Winick, who was Mayor of the City during the events underlying this dispute; Gary McKinney, Cassie Schrum, Carie Braddy, Debbi Matthews, who served as members of the City's Board of Aldermen ("Board") at that time; and Mark Bishop, legal counsel for the Board and the City.

Plaintiff was hired as City Clerk for the City of Leadington, Missouri, in May 2018.  She served without incident until July 31, 2018.  That day, the City's Board of Aldermen (specifically, Schrum, McKinney, Braddy, and Winick) conducted city business in a closed session at an improperly noticed meeting.  During that meeting, Plaintiff "reported to the Board, Mayor and City Attorney that the City Court Clerk Tracey Fisher was not being paid for her total hours worked," in violation of Missouri law, Mo. Rev. Stat. § 290.505.  Doc. [26] ¶ 15.  Bishop told Plaintiff to "be silent" as to those violations and further declared that the City would not honor sunshine law requests made pursuant to Mo. Rev. Stat. § 610.010 about the violations.  *Id.*

After the fact, on the advice of City Attorney Bishop, Plaintiff changed the July 31, 2018, meeting minutes to make it appear that the session had been open, rather than closed.  At Schrum's direction, Plaintiff deleted references to violation of Missouri wage laws.  Because Plaintiff believed that some alterations violated Missouri's sunshine law, she changed the minutes only after securing advice from the Missouri Finance Officers Association, the Missouri Municipal League, and Bishop.  Plaintiff made the changes by italicizations and cross-outs, following Bishop's advice and the agencies' guidelines.  Around the same time, Schrum further altered Board meeting minutes, in concert with McKinney and Bishop.  Among other changes, they deleted a favorable review of Plaintiff's job performance and a recommendation that she receive a raise.

2

On or about August 21, 2018, a citizen named Kevin Degrant filed a public complaint against McKinney at a Board meeting, stating that McKinney had libeled, slandered, and verbally abused him about problems with faulty construction and garbage removal at a local apartment.  Degrant expressed fears for his physical safety.  McKinney instructed Plaintiff to remove all record of Degrant's complaint from the minutes of the open meeting.  Bishop informally instructed Plaintiff to place printouts of Degrant's allegations in each alderman's packets for their next meeting—but not to include the complaint in the official minutes.

Schrum presented altered minutes for approval by the Board at its October 9, 2018, public meeting.  The Board then went into a closed session and voted to terminate Plaintiff. McKinney and Schrum voted in favor; Braddy, the only other alderperson present, did not.  *Id.* ¶ 17.

On October 10, 2018, Plaintiff reported to work, where she was informed that she had been terminated.  She was not given a reason.  She requested a service letter pursuant to Mo. Rev. Stat. § 290.140, but she never received a response.  She subsequently appeared before the entire Board to appeal her termination, but the Board allowed her termination to stand.

## Motion to Dismiss Standard

The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of the complaint.  When considering a Rule 12(b)(6) motion, a court assumes the factual allegations of a complaint are true and construes them in favor of the plaintiff.  *Neitzke,* 490 U.S. at 326-27.

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  The Supreme Court has explained that Rule 8(a)(2) requires "more than labels and conclusions, and a

3

formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *accord Iqbal,* 556 U.S. at 678-79.  To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The issue in considering such a motion is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of the claim.  *See Twombly,* 550 U.S. at 556.

## Discussion

Plaintiff's Amended Complaint has five counts stemming from her employment as City Clerk:

1) "42 U.S.C. Section 1983 Violation of Johnson's First Amendment Right to Free Speech," against all Defendants;

2) "Conspiracy to Violate Johnson's Constitutional Rights Cognizable under 42 U.S.C. § 1983," against Defendants McKinney, Schrum, Bishop, Braddy, Winick, and Matthews, in their individual capacities;

3) "Violation of Missouri Public Policy," against all Defendants in their official capacities;

4) "Violation of Missouri Whistle Blower Statute," against all Defendants in both their individual and official capacities; and

5) "Breach of Contract – At Will Employee/Public Policy," presumably against all Defendants.

Each of the two motions to dismiss under consideration addresses all five of Plaintiff's counts.  *See* Docs. [31], [33].  The City and Defendants McKinney, Schrum, Bishop, and Matthews argue that they are entitled to sovereign immunity and qualified immunity, respectively, on various claims, and that Plaintiff's claims also fail on their merits.  Doc. [31]. Defendants Winick and Braddy filed a separate motion arguing that Plaintiff failed to allege that they had any individual or personal involvement in her termination, while also echoing many of

the arguments made in the other motion to dismiss.  Doc. [33].  In the interest of efficiency, the Court will address the challenges contained in both motions in tandem, taking each of Plaintiff's causes of action in turn.

**Count I:  Section 1983 Violation of Plaintiff's First Amendment Right to Free Speech**

In her first Count, Plaintiff alleges that all of the Defendants—that is, the City and all of the Individual Defendants—violated her First Amendment right to free speech, in violation of 42 U.S.C. § 1983, by terminating her for expressing concerns about violations of Missouri's wage and sunshine laws.

**A.  Count I against Individual Defendants**

Plaintiff brings her § 1983 First Amendment claim against the Individual Defendants in both their official and individual capacities.  As a preliminary matter, Plaintiff's § 1983 claims against the Individual Defendants in their official capacities are redundant of her claim against the City.  *See Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010) ("A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity.").  Therefore, Plaintiff's § 1983 claims against the Individual Defendants in their official capacities will be dismissed.  The question remains whether Plaintiff has stated a claim against any of the Individual Defendants in their individual capacities.

**1.  *Plaintiff has not sufficiently pled a § 1983 claim against Braddy or Winick in their individual capacities.***

"To state a claim under § 1983, a plaintiff must plead the personal involvement of each government official who has allegedly violated the plaintiff's constitutional rights."  *Smith v. Sachse*, No. 4:17-cv-2593, 2018 WL 3159081, at *4 (E.D. Mo. June 28, 2018).  Only four of Plaintiff's allegations involve Winick and Braddy.  Those allegations include:  (1) that they

participated in an improperly noticed July 31, 2018, closed session of the Board, where Plaintiff disclosed that Ms. Fisher was not being paid for her total hours worked, Doc. [26] ¶ 14; (2) that the July 31, 2018, meeting minutes were changed with Braddy's consent, *id.* ¶ 18; (3) that Braddy did not vote for Plaintiff's termination, and Winick did not participate in the vote, *id.* ¶ 17; and (4) that, on October 9, 2018, Plaintiff appeared before the entire Board to appeal her termination, but the Board allowed her termination to stand, *id.* ¶ 23.

Taking all of those allegations as true, the Court finds no basis for a conclusion that Winick and Braddy played a personal role in Plaintiff's termination.  Per Plaintiff herself, Braddy did not support her original termination, and Winick did not participate in it.  Plaintiff also does not allege that Braddy or Winick voted to uphold her termination on appeal. Because she fails to allege any individual or personal involvement by Braddy or Winick that led to the deprivation of her First Amendment rights, Plaintiff's first count will be dismissed as to those two defendants.

### 2. *Plaintiff's § 1983 claims against McKinney, Schrum, Bishop, and Matthews in their individual capacities survive because they are not entitled to qualified immunity.*

Defendants McKinney, Schrum, Bishop, and Matthews do not contest the sufficiency of Plaintiff's allegations that they were involved personally in the events that Plaintiff claims deprived her of her First Amendment rights.  Instead, they argue that they are entitled to qualified immunity with respect to Plaintiff's § 1983 claims against them in their individual capacities.  The Court disagrees.

Qualified immunity protects state officials from civil liability for actions that "[do] not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).  In determining whether

6

McKinney, Schrum, Bishop, and Matthews are entitled to qualified immunity in this case, the Court considers two questions:  (1) whether Plaintiff has alleged a violation of a constitutional right by those individuals; and (2) whether the right at issue was "clearly established" at the time of their alleged misconduct.  *See Pearson v. Callahan,* 555 U.S. 223, 232 (2009); *Shockency v. Ramsey County,* 493 F.3d at 947–48.  "Qualified immunity is an affirmative defense, to be upheld in a motion to dismiss only when the immunity can be established on the face of the complaint."  *Bradford v. Huckabee,* 330 F.3d 1038, 1041 (8th Cir. 2003).  "Dismissal is inappropriate unless it appears *beyond doubt* that the plaintiff can prove *no set of facts* in support of [her] claim which would entitle [her] to relief."  *Hafley v. Lohman,* 90 F.3d 264, 266 (8th Cir. 1996) (emphasis added) (quoting *McCormack v. Citibank, N.A.*, 979 F.2d 643, 646 (8th Cir. 1992)).

### a.   Plaintiff has alleged a violation of a constitutional right by McKinney, Schrum, Bishop, and Matthews.

The first part of the qualified immunity analysis asks whether Plaintiff's Amended Complaint successfully states a claim of retaliation for the exercise of her First Amendment rights against McKinney, Schrum, Bishop, and Matthews.  It does.

To establish a prima facie case of retaliation, a plaintiff must show that "(1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) a causal connection existed between the two."  *Wagner v. Campbell*, 779 F.3d 761, 766 (8th Cir. 2015) (quoting *Butler v. Crittenden Cty*, 708 F.3d 1044, 1050-51 (8th Cir. 2013)).

To determine whether Plaintiff here engaged in speech protected by the First Amendment, the Court follows a two-step inquiry.  *See Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006); *Bradford*, 330 F.3d at 1040-41.  First, it determines whether Plaintiff made her comments regarding alleged violations of Missouri wage and sunshine laws "speaking as [a]

citizen[] about matters of public concern." *Garcetti*, 547 U.S. at 419.  If Plaintiff satisfies that first step, the Court balances her right to speak against the interest of the government in promoting efficiency by prohibiting her speech.  *See Hafley*, 90 F.3d at 267 (citing *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)).

To trigger First Amendment protection for speech, the "employee must 'speak as a citizen addressing matters of public concern.'"  *Lindsey v. City of Orrick, Missouri*, 491 F.3d 892, 897 (8th Cir. 2007) (quoting *Garcetti*, 547 U.S. at 417).  "A public employee's speech is not protected by the First Amendment if it 'owes its existence' to [the employee's] professional responsibilities," *McGee v. Pub. Water Supply Dist. No. 2*, 471 F.3d 918, 921 (8th Cir. 2006) (quoting *Garcetti*, 547 U.S. at 411), because "a public employee does not speak as a citizen if [she] speaks pursuant to [her] job duties."  *Lindsey*, 491 F.3d at 898; *accord Davenport v. Univ. of Ark. Bd. of Trs.*, 553 F.3d 1110, 1113 (8th Cir. 2009).

"A public employee's speech is pursuant to his employment duties 'if it is part-and-parcel' of the employee's concerns about his ability to 'properly execute his duties.'"  *Groenewold v. Kelley*, 888 F.3d 365, 371 (8th Cir. 2018) (citation omitted).  "[U]nder the First Amendment, speech can be 'pursuant to' a public employee's official job duties even though it is not required by, or included in, the employee's job description, or in response to a request by the employer."  *Lyons v. Vaught*, 875 F.3d 1168, 1174 (8th Cir. 2017) (citation omitted).  "Under *Garcetti*, 'a public employee speaks without First Amendment protection when [s]he reports conduct that interferes with [her] job responsibilities, even if the report is made outside [her] chain of command."  *Id.* at 1175 (citation omitted).  "The question under *Garcetti* is not whether the speech was made during the employee's work hours, or whether it concerned the subject matter of his employment . . . .  Rather, it is whether the speech was made pursuant to the

employee's job duties, or in other words, whether it was 'commissioned' by the employer."
*Sexton v. City of Hannibal*, 832 F. Supp. 2d 1060, 1065 (E.D. Mo. 2011) (quoting *Garcetti*, 547
U.S. at 421-22).  The proper judicial inquiry is a "practical one," not controlled or limited by
"[f]ormal job descriptions."  *Garcetti*, 547 U.S. at 424.

Construed in the light most favorable to Plaintiff, the Amended Complaint makes out a
claim that her comments regarding violations of Missouri's sunshine laws—but not her
comments regarding payment of Ms. Fisher—were made in her capacity as a private citizen
addressing a matter of public concern.

Plaintiff alleges that she approached the Missouri Finance Officers Association and the
Missouri Municipal League with her concerns about altering the minutes, which she believed
violated Missouri's sunshine law.  She describes reporting those concerns to external
organizations as "not in the course of her regular and normal course of employment."  Doc. [26]
¶ 16.  When "a public employee raises [job] concerns to persons outside the workplace" in
addition to "rais[ing them] up the chain-of command" at [her] workplace, then those "external
communications" are "ordinarily not made as an employee, but as a citizen."  *Sexton*, 832
F.Supp.2d at 1065 (citing *Davis v. McKinney,* 518 F.3d 304, 313 (5th Cir. 2008)).

By contrast, Plaintiff describes her comments regarding Ms. Fisher's payment as "private
expression," Doc. [26] ¶ 27, "reported" at a "closed" meeting "to the Board, Mayor and City
Attorney," *id.* ¶ 15.  When a public employee relates information related to her job duties only up
the chain of command at her workplace, she is ordinarily speaking in her capacity as a public
employee, not as a private citizen.  *See Davis*, 518 F.3d at 313 (collecting cases).  Plaintiff does
not claim to have discussed her wage concern with any individual or entity other than her
employer; nor does she claim that reporting an issue about Ms. Fisher's payment to her superiors

9

was unrelated to her duties as City Clerk.  Therefore, she does not successfully claim First Amendment protection for that speech under *Garcetti*.

Defendants argue that Plaintiff's job responsibilities, which are defined by statute at Mo. Rev. Stat. § 79.320, demonstrate that all her comments were made pursuant to those responsibilities, and therefore she was speaking at all times as a public employee.  At this early stage in this litigation, the Court cannot determine based on a few sentences of Missouri statute whether reporting suspected violations of Missouri's sunshine law to external organizations fell within Plaintiff's job responsibilities as City Clerk.  If such evidence emerges as the factual record is developed, the Court can reconsider the issue at summary judgment.  *See Katosang v. Wasson-Hunt*, No. 06-0887-CV-W-HFS, 2007 WL 2711672, at *1 (W.D. Mo. Sept. 14, 2007) (denying motion to dismiss where defendants cited plaintiff's written job requirements to support their claim that plaintiff was speaking in her capacity as an employee because the job requirements did not "sufficiently resolve[] the issue[] [to warrant taking] the drastic action of dismissing the complaint").

In addition to being in her capacity as a private citizen, Plaintiff's communications must have addressed "a matter of public concern" to merit First Amendment protection.  *Lindsey*, 491 F.3d at 898.  "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record."  *Connick v. Myers,* 461 U.S. 138, 147-48 (1983)  The Eighth Circuit has held that speech regarding a city council's "apparent lack of sunshine law compliance" is "clearly on a matter of public concern."  *Lindsey*, 491 F.3d at 899.[3]

---

[3]  Because the Court concludes that Plaintiff's comments regarding proper payment of Ms. Fisher were made as a public employee pursuant to her job responsibilities, it is not necessary to determine whether that issue is one of public concern.

Because Plaintiff has adequately pled that she made her comments about the alleged sunshine law violations as a private citizen speaking on a matter of public concern, the Court would normally proceed by balancing Plaintiff's alleged interest in speaking out against the interest of the government in promoting efficiency.  *See Hafley*, 90 F.3d at 267 (citing *Pickering*, 391 U.S. at 568).  Defendants make no argument that prohibiting Plaintiff's speech would have promoted governmental efficiency; therefore, the Court has nothing against which to balance Plaintiff's interest.  Under the circumstances, the Court finds that Plaintiff has pled sufficient interest in speaking out to satisfy *Pickering*.  *See Hafley*, 90 F.3d at 267 ("The *Pickering* balance understandably favors the plaintiff when the test is based solely on the allegations in the complaint."); *cf. Lindsey*, 491 F.3d at 900-01 (finding that the *Pickering* balancing test is not triggered where there is no evidence that the speech at issue caused disruption).

Plaintiff also meets the second and third steps in establishing a prima facie case of retaliation:  She was terminated, which is an adverse employment action, and she alleges in her Amended Complaint that "her refusal to alter public meeting minutes . . . and other comments, complaints, and concerns was a motivating factor in the Defendants' decision to fire her."  Doc. [26] ¶ 27.  The Court finds that Plaintiff's Amended Complaint successfully states a claim of retaliation for the exercise of her First Amendment rights against McKinney, Schrum, Bishop, and Matthews.

### b.  Plaintiff's allegedly violated right was "clearly established."

The second step in the qualified immunity analysis is to determine whether the violated right was "clearly established" at the time of McKinney, Schrum, Bishop, and Matthews's alleged misconduct.  *See Pearson,* 555 U.S. at 232; *Shockency,* 493 F.3d at 947-48.

The Eighth Circuit has "taken a broad view of what constitutes 'clearly established law' for the purposes of a qualified immunity inquiry." *Sexton*, 210 F.3d at 909 (quoting *Boswell v. Sherburne County*, 849 F.2d 1117, 1121 (8th Cir. 1988)).  The "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  The question, therefore, is whether a reasonable official might have believed that it was permissible to fire Plaintiff in retaliation for speaking out about suspected sunshine law violations.  Under clear Eighth Circuit precedent, the answer is no.  *See Lindsey*, 491 F.3d at 902 ("[A] reasonable official would have realized it was illegal to terminate [an employee] for speaking out about the City's perceived violations of Missouri's sunshine law.").

Because Plaintiff successfully alleges a violation of a constitutional right, and the right at issue was "clearly established" at the time of their alleged misconduct, McKinney, Schrum, Bishop, and Matthews cannot establish qualified immunity "on the face of the complaint." *Bradford,* 330 F.3d at 1041.  Therefore, the Court will not dismiss Plaintiff's § 1983 claims against them in their individual capacities.

**B.  Count I against the City**

A municipality is not liable under § 1983 for the negligent acts of its employees or officials. *Russell v. Hennepin County,* 420 F.3d 841, 846 (8th Cir. 2005) (citing *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986)).  Liability will not attach to a municipality solely because it employs an alleged tortfeasor.  *Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658, 690-94 (1978).  For a governmental entity to be liable under § 1983, the constitutional deprivation must have been "committed pursuant to an official custom, policy, or practice," or the violation must be "so pervasive among non policymaking employees . . . 'as to constitute a

custom or usage with the force of law.'"  *Granda v. City of St. Louis*, 472 F.3d 565, 568 (8th Cir. 2007) (citation omitted)).

The Eighth Circuit carefully differentiates between claims based on custom and those based on policy.  *See Ware v. Jackson County, Missouri.*, 150 F.3d 873, 880 (8th Cir. 1998).  To establish a claim for "custom" liability, a plaintiff must demonstrate:

1)  The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2)  Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3)  That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cnty. Med. Dep't,* 725 F.3d 825, 828 (8th Cir. 2013) (citation omitted).

Plaintiff alleges that the City "has a custom, practice or usage of silencing employees and falsifying the public record and punishing employees for the exercise of their First Amendment rights."  Doc. [26] ¶ 33.  Her support for that contention is "the termination or the resignation of several City officials, including but not limited to the Mayor, Chief of Police, Prosecuting Attorney and all City staff workers with the exception of four (4) police officers and the separation of several City Clerks before and after the termination of Denise Johnson."  *Id.*  But alleging a mass exodus of Leadington's municipal employees is not equivalent to alleging a custom or practice of silencing and retaliating against employees for the exercise of First Amendment rights.  The Amended Complaint contains no allegation that any departure other than Plaintiff's was related to an employee's exercise of his or her First Amendment rights.

While Plaintiff fails to allege an unconstitutional *custom*, she does successfully allege an unconstitutional *policy*.  "A 'policy' is a 'deliberate choice to follow a course of action . . . made

13

from among various alternatives by the official or officials responsible under state law for establishing final policy with respect to the subject matter in question.'" *Russell,* 420 F.3d at 847 (quoting *Hayes v. Faulkner County,* 388 F.3d 669, 674 (8th Cir. 2004).  Although "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, an unconstitutional government policy could be inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business." *Davison v. City of Minneapolis*, 490 F.3d 648, 659 (8th Cir. 2007) (internal quotation marks and citations omitted); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) ("[W]here action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly."); *Angarita v. St. Louis Cnty.*, 981 F.2d 1537, 1547 (8th Cir. 1992) ("As a final policymaker for the department, any action taken by [Defendant] constitutes the policy of St. Louis County in these circumstances.").

Plaintiff alleges that she "appeared before the entire Board, which included all Defendants, to appeal her termination but the Board without cause and in violation of her constitutionally protected rights allowed her termination to stand."  Doc. [26] ¶ 23.  She further alleges that "the termination decision at issue herein was illegally made and/or incorrectly ratified by Defendants with final policymaking authority."  Doc. [26] ¶ 34.  Because Plaintiff alleges that a deliberate choice by City officials with final policymaking authority deprived her of a constitutional right, she has stated a § 1983 claim against the City.  *See Russell,* 420 F.3d at 847.

Plaintiff's Count I will be dismissed as to all Individual Defendants in their official capacities and as to Winick and Braddy in their individual capacities.  Plaintiff may continue to

14

pursue Count I against the City and against McKinney, Schrum, Bishop, and Matthews in their individual capacities.

### Count II:  Conspiracy to Violate Plaintiff's Constitutional Rights

Count II alleges a civil conspiracy by the Individual Defendants to violate Plaintiff's First Amendment rights.  Plaintiff alleges that the Individual Defendants "reached a mutual understanding to protect McKinney and Schrum from public scrutiny by firing Plaintiff because of her constitutionally protected speech . . . and in furtherance of this conspiracy violated [Plaintiff's[ constitutional right to free speech."  Doc. [26] ¶ 39.  Plaintiff alleges multiple overt acts in furtherance of this alleged conspiracy, including her termination and the upholding of her termination on appeal.  *Id.* ¶¶ 39-41.  She further alleges that all Individual Defendants were aware of both the City's unlawful public record-keeping practices and the illegal actions taken against Plaintiff.

To successfully plead a § 1983 conspiracy claim against a particular defendant, Plaintiff must allege:

> (1) that the defendant conspired with others to deprive her of a constitutional right;
>
> (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and
>
> (3) that the overt act injured [Plaintiff].

*Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999); *see also White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008).  "[T]he plaintiff is additionally required to prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim."  *Askew*, 191 F.3d at 957.

"For a claim of conspiracy under Section 1983, the plaintiff need not show that each participant knew 'the exact limits of the illegal plan[],' but the plaintiff must show evidence

sufficient to support the conclusion that the defendants reached an agreement to deprive the plaintiff of constitutionally guaranteed rights." *White*, 519 F.3d at 816 (quoting *Larson by Larson v. Miller*, 76 F.3d 1446, 1458 (8th Cir. 1996) (Gibson, J., concurring)).  "The question of the existence of a conspiracy to deprive the plaintiffs of their constitutional rights should not be taken from the jury if there is a possibility the jury could infer from the circumstances a 'meeting of the minds' or understanding among the conspirators to achieve the conspiracy's aims." *White*, 519 F.3d at 816 (citation omitted).

Plaintiff has alleged enough facts to survive both motions to dismiss her civil conspiracy claim.  She has alleged that the Individual Defendants conspired to deprive her of her constitutional rights to cover up wrongdoing by members of the Board.  She has alleged that the Individual Defendants committed overt acts in furtherance of the conspiracy, including firing her, altering meeting minutes to cover up their alleged wrongdoing, and denying her appeal in order to protect themselves.  And Plaintiff was plainly injured by her termination.

The Individual Defendants argue that (1) there was no deprivation of a constitutional right, and therefore a conspiracy claim will not lie; and (2) to the extent that there was a violation of Plaintiff's First Amendment rights, her claims are barred by qualified immunity.  But the Court has already found that Plaintiff has sufficiently alleged that McKinney, Schrum, Bishop, and Matthews violated her First Amendment rights, and that they are not protected by qualified immunity.[4]  Therefore, Defendants' arguments do not defeat the conspiracy claim as to those four defendants.

---

[4] As to Winick and Braddy, because the Court has found that Plaintiff fails to allege that they personally participated in any underlying constitutional violation, there is no need to determine whether any of their alleged conduct merits qualified immunity.  *See Ambrose v. Young*, 474 F.3d 1070, 1077 n.3 (8th Cir. 2007) ("[I]f the court finds no constitutional violation occurred, the

Plaintiff's civil conspiracy claim against Winick and Braddy also survives, despite the Court's finding that she has not stated a claim against them for participating in any violation of her constitutional rights.  To allege civil conspiracy liability, it is sufficient for Plaintiff to allege that Braddy and Winick *agreed* with their co-defendants to deprive her of her rights; she does not have to allege that they perpetrated the deprivation themselves.  *See White*, 519 F.3d at 816; *Askew*, 191 F.3d at 957.

Plaintiff alleges in her Amended Complaint that, "Defendants furthered the conspiracy by participating in it from its inception *or by participating in the cover-up thereof and/or ignoring the course of conduct set forth herein so as to insulate themselves and others from liability* for the outrageous and unlawful acts of the Defendants as described herein, *showing a tacit understanding to carry out the prohibited conduct*."  Doc. [26] ¶ 41 (emphasis added).  Plaintiff alleges that Braddy and Winick's conduct after her termination—specifically their participation in a cover-up and/or decision to ignore the misconduct—is proof that they agreed with the other defendants "to carry out the prohibited conduct."  *See, e.g.*, *S.L. ex rel. Lenderman v. St. Louis Metro. Police Dep't Bd. of Police Comm'rs*, 725 F.3d 843, 849-53 (8th Cir. 2013) (holding that a plaintiff has a right to bring a § 1983 action against defendants for "unlawfully covering up a constitutional violation" even where those defendants did not participate in the underlying constitutional violation).  At this early stage of the litigation, those allegations are sufficient to state a claim for conspiracy against Winick and Braddy.

Accordingly, Plaintiff may continue to pursue Count II against all of the Individual Defendants.

---

analysis ends and the issue of qualified immunity is not addressed.") (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

**Count III:  Violation of Missouri Public Policy**

Count III alleges a violation of Missouri public policy against both the City and the Individual Defendants in their official capacities.  Plaintiff alleges that Missouri courts have declared it against public policy to discharge an employee for engaging in constitutionally protected activity and performing duties in accordance with Missouri law.  She further alleges that Defendants' conduct, in directing her to violate the sunshine law and cover up violations of the sunshine law and Missouri wage law, and in discharging her for refusing to obey these directives, violates public policy.

### A.  Count III against the Individual Defendants

Plaintiff brings her violation of Missouri public policy claim against the Individual Defendants in their official capacities.  As explained above, official capacity claims against the Individual Defendants are redundant of Plaintiff's claim against the City.  "A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity." *Veatch*, 627 F.3d at 1257.  Therefore, Plaintiff's Count III will be dismissed as to the Individual Defendants.

### B.  Count III against the City

Defendants argue that Plaintiff's Count III against the City is barred by sovereign immunity because the allegations in Plaintiff's Amended Complaint are insufficient to establish a waiver of the City's sovereign immunity or to establish that her claims come within any of the statutory exceptions to the City's sovereign immunity, as set out in Mo. Rev. Stat. § 537.600.

Sovereign immunity shields a municipality from common law tort liability in all but exceptional circumstances.  One such exceptional circumstance is "to the extent the municipality has procured insurance, thereby waiving sovereign immunity up to but not beyond the policy

limit and only for acts covered by the policy." *Bennartz v. City of Columbia*, 300 S.W.3d 251, 259 (Mo. Ct. App. 2009) (citing Mo. Rev. Stat. § 537.610).  Plaintiff alleges that the City has insurance to cover her claims, and that the City has thereby waived its sovereign immunity.  Doc. [26] ¶ 24.

In order to qualify for any exception to municipal sovereign immunity, a plaintiff must plead the qualifying facts "with specificity."  *Parish v. Novus Equities Co.*, 231 S.W.3d 236, 242 (Mo. Ct. App. 2007).  To qualify for the insurance exception in particular, Plaintiff "shoulders the burden of proving the existence of an insurance policy, and that the terms of the policy cover [her] claims."  *Topps v. City of Country Club Hills*, 272 S.W.3d 409, 415 (Mo. Ct. App. 2008). Plaintiff does not plead the facts qualifying her claims for the insurance coverage exception to municipal sovereign immunity "with specificity"; she simply asserts that the City has insurance to cover her claims.  Doc. [26] ¶24.

In response to Plaintiff's nonspecific allegations, Defendants attached a copy of the policy's terms to their Reply in Support of their Motion to Dismiss.[5]  *See* Doc. [47-1].  Section 1, Part A(2) provides coverage to the City for "Employment Practices Liability."  That coverage applies only to claims *not* established under Missouri law, however, which Plaintiff's third count—violation of Missouri public policy—plainly is.  *See Margiotta v. Christian Hosp. Ne. Nw.*, 315 S.W.3d 342, 345-347 (Mo. 2010) (at-will employment doctrine is well-established Missouri law, and Missouri courts recognize the public-policy exception for whistleblowers).

---

[5] Consideration of the insurance policy does not convert Defendants' motion into a motion for summary judgment.  "'Though matters outside the pleading may not be considered in deciding a Rule 12 motion to dismiss, documents necessarily embraced by the complaint are not matters outside the pleading.'  Documents necessarily embraced by the pleadings include 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading.'"  *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) (internal citations omitted).

Further, Section I states that the policy should not be construed to broaden the City's liability beyond the sovereign immunity provisions of Mo. Rev. Stat. §§ 537.600 to 537.610, nor "to abolish or waive any defense at law which might otherwise be available" to the City.  Doc. [47-1] at I(B).  Interpreting identical disclaimer language from a similar policy, the court in *Grospitz v. Abbott*, Nos. 04-4072-CV-C-NKL, 04-4073-CV-C-NKL, 04-4074-CV-C-NKL, 2005 WL 2649707, *8 (W.D. Mo. 2005), found that "Missouri courts interpret this language . . . to limit the public entity's liability coverage to only those claims involving the operation of a motor vehicle or the dangerous conditions of public property."

Thus, the City's insurance does not cover Plaintiff's claims, and those claims do not qualify for the insurance exception from municipal sovereign immunity.  *See Topps*, 272 S.W.3d at 409 (analyzing similar language for purposes of deciding city's sovereign immunity claim against a charge of unlawful whistleblower retaliation).

Accordingly, Count III of the Amended Complaint is dismissed as to all Defendants.

### Count IV:  Violation of Missouri Whistleblower Statute

Count IV alleges violation of Missouri's whistleblower statute, Mo. Rev. Stat. § 105.055, against the City, as well as against all Individual Defendants in both their individual and official capacities.  Plaintiff alleges that she was terminated because she spoke out regarding the City's failure to pay properly an employee and insisted upon a correct transcription of meeting minutes.

### A.  Count IV against Individual Defendants

As explained as to Counts I and III, Plaintiff's claims against the Individual Defendants in their official capacities are redundant of Plaintiff's claim against the City.  "A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity."  *Veatch*, 627 F.3d at 1257.  Therefore, they will be dismissed.

But Plaintiff also brings Count IV against the Individual Defendants in their individual capacities.

Mo. Rev. Stat. § 105.055.7(1) authorizes a person alleging a violation of the statute to "bring a civil action against the *public employer*" within one year of the alleged violation (emphasis added).  A "public employer" is defined as "any state agency or office, the general assembly, any legislative or governing body of the state, any unit or political subdivision of the state, or any other instrumentality of the state."  Mo. Rev. Stat. § 105.055.1(3).  The definition of "public employer" does not include government officials, government employees, board members, or any other natural persons.  Therefore, Plaintiff's claims against the Individual Defendants in their individual capacities for violation of Mo. Rev. Stat. § 105.055 fail as a matter of law.  *See also Mucci v. St. Francois Cnty. Ambulance District, et al.*, No. 4:19-CV-01868-NCC, 2019 WL 6170721, at *4 (E.D. Mo. Nov. 20, 2019) (finding that the plain text of Mo. Rev. Stat. § 105.055 does not allow suit against individual defendants because they are individuals, not entities).

### B.  Count IV against the City

As explained with respect to Count III, the City is protected from tort liability unless Plaintiff's claim qualifies for a specific exception to sovereign immunity.  As to Count IV, Plaintiff's invocation of the insurance coverage exception again fails to vindicate her claim, because (a) it is not pled with specificity, and (b) the terms of the policy produced by Defendants contradict her claim.  Section I, Part A(1) of the policy covers "claims on causes of action established by Missouri Law"—which Plaintiff's whistleblower claim does—but *only when those claims arise out of injuries resulting from motor vehicle accidents and dangerous property conditions*.  Doc. [47-1] at I(A)(1)(a)-(b).  Plaintiff's whistleblower claim does not fall within the

21

text of Section I, Part A(1) of the City's insurance policy; therefore, it cannot fall under the insurance coverage exception to municipal sovereign immunity.

Plaintiff argues in the alternative that Missouri's whistleblower statute, Mo. Rev. Stat. § 105.055, operates as an exception to municipal sovereign immunity, because it licenses a public employee to bring a civil action against a "public employer" for taking disciplinary action against him or her for disclosing information about a violation of the law.  Doc. [41] at 9; *see also* Mo. Rev. Stat. §§ 105.055.1(3), 105.055.3, 105.055.7(1)).  More specifically, Plaintiff argues that a 2018 revision to the whistleblower statute effected a waiver of the City's sovereign immunity by explicitly authorizing suit against a "public employer," defined as "any unit or political subdivision of the state," which includes municipalities.[6]  Because revised Mo. Rev. Stat. § 105.055 specifically authorizes whistleblower lawsuits against municipalities, Plaintiff argues, the City cannot claim immunity from Plaintiff's claim under that statute.  The Court agrees.

Missouri law is clear that any statutory waiver of sovereign immunity must be read "narrowly" and "strictly construed" in favor of protecting public entities from suit.  *Ford Motor Co. v. Dir. of Revenue*, 97 S.W.3d 458, 461 (Mo. 2003); *Stigger v. Mann*, 263 S.W.3d 721, 728–29 (Mo. Ct. App. 2008).  There is no such thing as an "implied" waiver of sovereign immunity under Missouri law; the General Assembly's intent "must be express."  *Stigger*, 263 S.W.3d at 729.  However, "[n]othing in the statutes or case law requires that certain magic words must be

---

[6] Prior to the 2018 amendment, Mo. Rev. Stat. § 105.055.7(1) stated that, "a person who alleges a violation of this section may bring a civil action for damages.'"  In 2018, the legislature added the phrase "against the public employer" after the word "damages."  S.B. 1007, 2018 Reg. Sess. (Mo. 2018).  The amendment also added a definition section, in which "public employer" is defined as "any state agency or office, the general assembly, any legislative or governing body of the state, any unit or political subdivision of the state, or any other instrumentality of the state."  *Id.*

used in order to waive sovereign immunity." *Bachtel v. Miller Cnty. Nursing Home Dist.*, 110 S.W.3d 799, 804 (Mo. 2003); *see also H.S. v. Bd. of Regents, Se. Mo. State Univ.*, 967 S.W.2d 665, 673 (Mo. Ct. App. 1998) (holding that the legislature had expressly waived sovereign immunity in making the Missouri Human Rights Act applicable to state employers where the definition of "employer" included "the state, or any political or civil subdivision thereof").

Since the 2018 amendment of Section 105.055, no published judicial opinion has held that the statute is an express waiver of municipal sovereign immunity, but neither has any court explicitly rejected that claim. And this Court has not found any judicial decision dismissing a § 105.055 claim against a municipality on the basis of sovereign immunity since the 2018 revision. Thus, whether Mo. Rev. Stat. § 105.055, as revised in 2018, effects a waiver of municipal sovereign immunity appears to be a novel question of statutory interpretation.

Generally, a federal court is bound by the interpretation of a state's statutes by the state's highest court. *Missouri v. Hunter*, 459 U.S. 359, 366-68 (1983). In the absence of such an interpretation, however, the federal court has the "responsibility to predict, as best [it] can, how that court would decide the issue." *Brandenburg v. Allstate Ins. Co.*, 23 F.3d 1438, 1440 (8th Cir. 1994). The Missouri Supreme Court's "primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute at issue." *Parktown Imports, Inc. v. Audi of Am., Inc.*, 278 S.W.3d 670, 672 (Mo. 2009).

The plain text of the statute supports Plaintiff's argument. The statute clearly allows that a "person who alleges a violation of this section **may bring a civil action against the public employer** for damages within one year after the occurrence of the alleged violation." Mo. Rev. Stat. § 105.055.7(1). Earlier in the same statutory section, it defines "public employer" to include "any unit or political subdivision of the state." *Id.* § 105.055.1(3). Although the statute

does not define "political subdivisions," that term is defined in other places in Missouri law, and those definitions invariably include cities as examples of political subdivisions.  For example, Section 15 of Article X of the Missouri Constitution defines "political subdivision" "to include townships, cities, towns, village, [etc.]."  And Mo. Rev. Stat. § 70.210—the current version of which became effective the same day as Mo. Rev. Stat. § 105.055—defines "political subdivision" as "counties, townships, cities, towns, villages, [etc.]."  Defendants point to no place in Missouri law—and the Court is aware of none—in which the term "political subdivision" is defined or applied in a way that *excludes* municipalities.  Therefore, on the statutory text alone, Section 105.055 does appear to provide an express waiver of a municipality's sovereign immunity to allow for whistleblower suits.

Case law supports the Court's reading of the plain text of § 105.055 as a waiver of municipal sovereign immunity.  In a recent case interpreting this statute, a fellow judge of the Eastern District of Missouri considered the scope of Mo. Rev. Stat. § 105.055's definition of "public employer."  *Mucci*, 2019 WL 6170721, at *4.  There, the court held that the plain text of that statutory definition—"any state agency or office, the general assembly, any legislative or governing body of the state, any unit or political subdivision of the state, or any other instrumentality of the state," Mo. Rev. Stat. § 105.055.1(3)—excluded natural persons.  *Id*. at *4.  Although the court held on that basis that the natural person defendants were immune from suit under Section 105.055, a clear implication of that conclusion is that those defendants that fall under the statute's definition of "public employer" *are* subject to suit.

In *State ex rel. Blue Springs Sch. Dist. v. Grate*, No. WD 81197, 2018 WL 2012127 (Mo. Ct. App. May 1, 2018), a Missouri state court interpreted the word "person," defined in the Missouri Human Rights Act without reference to the state or any subdivision thereof, and

24

contrasted it with the definition of the word "employer," which was defined in part as "includ[ing] the state, or any political or civil subdivision thereof[.]" *Id*. at *10.  The court held that the definition of "employer"—while not directly at issue in that case—"demonstrate[d] that when the General Assembly has intended to abrogate sovereign immunity as to particular acts of discrimination, it knows how to do so expressly." *Id*.  Again, while not directly applicable to this case, like *Mucci*, this logic suggests that, when a Missouri statute authorizes suit against a "public employer," and public employer is defined by that statute to include the state and its political subdivisions, the statute is intended to waive sovereign immunity as to those subdivisions.

Case law also confirms that, under Missouri law, the term "political subdivisions" includes municipalities.  "[M]unicipalities operate as both political subdivisions of the state and independent corporations." *Mahdi v. Bush*, No. 4:19CV183 HEA, 2020 WL 4429544, at *2 (E.D. Mo. July 31, 2020).  "[A]s previously discussed, the legislature can 'waive or impair the vested rights of **political subdivisions, such as cities**, without violating the prohibition on retrospective laws.'" *City of Aurora v. Spectra Commc'ns Grp., LLC*, 592 S.W.3d 764, 800 (Mo. 2019) (citation omitted) (emphasis added).  *See also State ex rel. Jack Frost Abattoirs, Inc. v. Steinbach*, 274 S.W.2d 588, 590 (Mo. App. 1955) ("As to the powers of a municipal corporation, we stated in *State ex rel. Spencer v. Anderson*, Mo. App., 101 S.W.2d 530, that such a corporation was but a creature or political subdivision of the State.").

In sum, Missouri courts have interpreted statutory authorizations of suits against "public employers" to constitute waivers of those entities' sovereign immunity.  The definition of "public employer" in Mo. Rev. Stat. § 105.055.1(3) includes "any unit or political subdivision of the state."  And Missouri statute and case law both consistently define "political subdivision" to

25

include municipalities.  Upon consideration of all of these factors, this Court's best prediction is that a Missouri court would interpret Mo. Rev. Stat. § 105.055 to constitute a waiver of the City's sovereign immunity against whistleblower lawsuits brought by its employees.

Plaintiff alleges that the City, a political subdivision of Missouri, violated Missouri's whistleblower statute, and that statute authorizes a person to "bring a civil action against the public employer for damages within one year after the occurrence of the alleged violation."  Mo. Rev. Stat. § 105.055.7.(1).  The Court holds that this language demonstrates the General Assembly's express intent to waive sovereign immunity in this limited circumstance.  *See, e.g.*, *Townsend v. Bayer Corp.*, 774 F.3d 446, 456 (8th Cir. 2014) ("Arkansas's Whistle–Blower Act addresses a specific situation where the Arkansas General Assembly briefly waives the state's sovereign immunity to allow a public employee to sue in state court.").

Accordingly, Count IV of the Amended Complaint is dismissed as to the Individual Defendants.  Plaintiff may continue to pursue Count IV against the City.

### Count V:  Breach of Contract – At Will Employee/Public Policy

Count V alleges breach of contract against all Defendants.  Plaintiff alleges that the parties entered an oral contract for public employment which included an implied covenant of good faith and fair dealing.  Plaintiff alleges that she always performed in a competent and professional manner and that Defendants breached the contract by terminating Plaintiff for speaking out.

Missouri law requires contracts with municipalities to be in writing.  Mo. Rev. Stat. §432.070.  Contracts with municipalities that are not in writing are not enforceable.  *Vigran v. Poelker*, 433 F. Supp. 168, 171 (E.D. Mo. 1977).  Plaintiff alleges that her contract with the City was oral.

The doctrine of substantial compliance can apply where a contract's terms are memorialized in an alternative form, such as in board meeting minutes, *Porter v. City of Lake Lotawana*, 651 F.3d 894, 898 (8th Cir. 2011), but Plaintiff has not produced any such evidence to establish the contract's terms. Without written proof of a contract, Plaintiff cannot proceed with her breach of contract claim against the City. *See id.* (affirming summary judgment in favor of city where city clerk had no written contract with city, because the clerk could not prove that she had a valid contract under Missouri law).

While Plaintiff does not specify which defendants are subject to Count V, in her opposition to a motion to dismiss, she describes her breach of contract allegations as being brought against the Individual Defendants as well as the City. Doc. [40] at 6 ("Count V of Plaintiff's Amended Complaint alleges the City and the individual Defendants in wrongfully discharging her and retaliation against her breached her contractual rights to her employment benefits."). Plaintiff has not alleged any employment contract between herself and any of the Individual Defendants. Where there is no contract, a claim for breach of contract will not lie. *See Kieffer v. Icaza*, 376 S.W.3d 653, 657 (Mo. 2012) (en banc) (the existence of a contract is one element of a claim for breach of contract under Missouri law).

Accordingly, Count V of the Amended Complaint is dismissed as to all Defendants.

## Conclusion

For the reasons stated above,

**IT IS HEREBY ORDERED** that Winick and Braddy's Motion to Dismiss (Doc. [33]) is **GRANTED in part** and **DENIED in part**. The Motion is **GRANTED** as to Counts I, III, IV, and V of the Amended Complaint against Winick and Braddy in their personal and official

27

capacities; and it is **DENIED** as to Count II against Winick and Braddy in their individual capacities.

      **IT IS FURTHER ORDERED** that the Motion to Dismiss submitted by the City, McKinney, Schrum, Bishop, and Matthews (Doc. [31]) is **GRANTED in part** and **DENIED in part**.  The Motion is **GRANTED** as to Count I against McKinney, Schrum, Bishop, and Matthews in their official capacities, Count IV against McKinney, Schrum, Bishop, and Matthews in their personal and official capacities, and Counts III and V against all movants; and it is **DENIED** as to Count I against the City and McKinney, Schrum, Bishop, and Matthews in their individual capacities, Count II against McKinney, Schrum, Bishop, and Matthews in their individual capacities, and Count IV against the City.

      Defendants shall file their Answer(s) to the remaining counts within fourteen (14) days of entry of this Order.

      An appropriate Order of Dismissal shall accompany this Memorandum and Order.

      Dated this 16th day of October, 2020.


                    *Sarah E. Pitlyk*
                    SARAH E. PITLYK
                    UNITED STATES DISTRICT JUDGE