UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DENISE JOHNSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:19-cv-02282-SEP |
| | ) |
| CITY OF LEADINGTON, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Before the Court is the Motion for Summary Judgment filed by Defendants City of Leadington, Cassie Schrum, Mark Bishop, Debbi Matthews, and Brooksana McKinney in her capacity as Personal Representative of the Estate of Gary McKinney. Doc. 87. Also pending in this matter are Plaintiff's Motion for Leave to File Sur-Reply, Doc. 106, and Defendants' Motion to Strike Summary Judgment Exhibits 7 and 8, Doc. 99. All three motions are fully briefed. For the reasons set forth below, the Motion for Summary Judgment is granted; the Motion for Leave to File Sur-Reply is denied; and the Motion to Strike is denied in part and denied as moot in part.

### FACTS AND BACKGROUND[1]

Plaintiff Denise Johnson was hired as a City Clerk for the City of Leadington in May 2018. Doc. 102 ¶ 1 (Statement of Uncontroverted Material Facts). Defendant City of Leadington is a fourth-class municipality in the State of Missouri. *Id.* ¶ 2. Defendants Cassie Schrum, Debbi Matthews, and Gary McKinney[2] were members of the City's Board of Aldermen (the Board) at the time of Johnson's employment. *Id.* ¶¶ 3-5. Casie Braddy was also a member of the Board. *Id.* ¶ 32. Defendant Mark Bishop was the City Attorney at the

---

[1] Unless otherwise noted, the Court finds that there is no genuine issue as to the material facts in this Section.

[2] Gary McKinney died intestate on August 16, 2020. Docs. 68, 74. Brooksana McKinney was appointed Personal Representative of his estate. Doc. 74. On Plaintiff's motion, the Court substituted Brooksana McKinney, in her capacity as Personal Representative of Gary McKinney's estate, as a defendant in this action. Doc. 76.

1

time of Johnson's employment.  *Id.* ¶ 6.  Dustin Winick was the City's Mayor, Doc. 89-7 at 1; City Clerk Debbie Eggers was Johnson's direct supervisor, Doc. 102 ¶ 7; Tracy Fisher was the City's Court Clerk, *id.* ¶ 19; and Dustin McKinney was the Police Chief.  *Id.* ¶ 14.

As City Clerk, Johnson's duties included managing payroll and timesheets for City employees, helping prepare the City budget, noticing and documenting all meetings of the Board, keeping a journal and minutes of those meetings, administering the oath of office to new alderpersons, entering ordinances, record keeping of personnel files and other City documents, general accounting, communicating with the public, and operating City Hall and answering the City Hall phone.  *Id.* ¶ 8.

Following a Board meeting, unofficial draft meeting minutes are created based off of the Clerk's handwritten or typed notes.  *Id.* ¶¶ 9, 10.  Once the draft minutes are approved by a vote of the Board, they become an official record of the City.  *Id.* ¶ 10.

On July 31, 2018, the Board held a meeting, during which Johnson recorded the minutes.  *Id.* ¶ 13.  At the meeting, the Board discussed various issues including Court Clerk Fisher's new role as a part-time employee of the City of Park Hills and a motion to make Fisher a full-time City employee with benefits.  Doc. 89-5 at 1-2.  Fisher, a part-time employee who frequently came in early and stayed late, worked more hours than she was being paid for.  Doc. 102 ¶¶ 18-20; Doc. 89-3 at 37:24-38:9.  No one from the City demanded that Fisher work extra hours without compensation.  Doc. 102 ¶ 20.  On September 10, 2018, Alderwoman Cassie Schrum proposed four changes to the July 31st draft minutes, including adding the statement "Casie stated we didn't want to lose [Fisher] and everyone agreed—Mayor said we had to talk with attorney first."  Doc. 102 ¶ 14; Doc. 89-4.  Johnson made the proposed changes but did so with redlines and italics, so as to distinguish her original draft from the amended draft, *id.* ¶ 15, because she believed that the requested changes violated the law, as she "did not hear it with [her] own two ears." Doc. 102 ¶ 16; Doc. 89-2 (Plaintiff's Deposition) at 82:18-19.  Johnson referenced her Missouri Finance Officers Association manual and sought advice from the Missouri Municipal League on how to proceed with the changes, but she never filed a complaint or grievance.  Doc. 102 ¶ 17.

While Johnson was Clerk, she received a verbal complaint from Kevin DeGrant, a citizen of neighboring Park Hills, regarding a dispute he had had with Alderman G.

2

McKinney. Doc. 102 ¶¶ 24, 25. DeGrant claimed that activity from McKinney's property was the cause of water damage to DeGrant's property. *See* Doc. 89-7 at 1. DeGrant also complained of the location of dumpsters near his property. *Id.* At the August 21st Board meeting, G. McKinney agreed to move the dumpsters, and Mayor Winick agreed to meet with DeGrant to discuss the water problems. *Id.* Johnson claims that DeGrant also made specific complaints about verbal abuse and threats by G. McKinney toward DeGrant and his family, Doc. 102 ¶ 27 (Response), but those complaints are not in the minutes, *see* Doc. 89-7 at 1. Although Johnson alleges that "Defendant McKinney instructed Plaintiff to remove *all* record of the complaint by Mr. DeGrant," Doc. 26 (Complaint) ¶ 19, DeGrant's water and trash complaints were recorded in the August 21st Board meeting minutes, Doc. 89-7 at 1.

On October 9, 2018, with Mayor Winick and only three alderpersons present, the Board voted to terminate and remove Johnson from her position as City Clerk.[3] Doc. 102 ¶ 31. Johnson appealed her termination, but her appeal was denied by a 3-to-1 vote of the Board on November 13, 2018.[4] Doc. 102 ¶ 32; Doc. 89-10.

Johnson filed her Complaint on August 1, 2019, alleging four counts related to her termination. Doc. 1. On November 5, 2019, Johnson filed an Amended Complaint that added a fifth count. Doc. 26. On December 3, 2019, Defendants Bishop, Matthews, G. McKinney, Schrum, and the City filed a Motion to Dismiss the Amended Complaint. Doc. 31. Then-Defendants Braddy and Winick separately filed a Motion to Dismiss the same day. Doc. 33. This case was transferred intra-district to this Court on January 9, 2020. Doc. 39. On October 16, 2020, the Court ruled on both motions to dismiss, allowing Count I (violation of Johnson's right to free speech) to proceed against the City and G. McKinney, Schrum, Matthews, and Bishop in their individual capacities; Count II (conspiracy to violate Johnson's right to free speech) to proceed against G. McKinney, Schrum, Matthews, Bishop, Braddy, and Winick in their individual capacities; and Count IV (violation of the Missouri whistleblower statute) to proceed against the City. Docs. 66, 67. Counts III (violation of Missouri public policy) and V (breach of contract) were dismissed without prejudice. *Id.*

---

[3] Alderpersons Schrum and G. McKinney voted for termination. Alderwoman Braddy was present but did not vote for termination; Alderwoman Matthews was not present. Doc. 102 ¶ 31.

[4] Alderman G. McKinney, Alderwoman Schrum, and Alderwoman Matthews voted to deny the appeal; Alderwoman Braddy voted to grant the appeal. Doc. 102 ¶ 32.

On August 13, 2021, Johnson filed a Stipulation for Dismissal of Alderwoman Braddy and Mayor Winick.  Doc. 109.  The remaining Defendants (City of Leadington, Brooksana McKinney in her capacity as personal representative of Alderman G. McKinney's estate, Alderwoman Schrum, Alderwoman Matthews, and City Attorney Bishop) collectively filed this Motion for Summary Judgment on June 1, 2021.  Doc. 87.  The Motion contends that Defendants are entitled to judgment on all of the remaining Counts:

> **Count I**:  Violation of Johnson's First Amendment right to free speech under 42 U.S.C. § 1983 against the City and the individual Defendants.
>
> **Count II**:  Conspiracy to violate Johnson's First Amendment right to free speech under 42 U.S.C. § 1983 against the individual Defendants.
>
> **Count IV**: Violation of Mo. Rev. Stat. § 105.055 (Missouri Whistleblower Statute) against the City.

## Legal Standard

Under Federal Rule of Civil Procedure 56, a court must grant a motion for summary judgment if it finds, based on the factual record, that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Material facts are those that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989) (citation omitted). "[S]ummary judgment should be granted where the evidence is such that it would require a directed verdict for the moving party," *Anderson*, 477 U.S. at 251 (quotation marks and citation omitted), because "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Id.* at 249 (citation omitted).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Id.* (citations omitted).

Where a heightened evidentiary standard applies to a claim, that heightened standard governs at the summary judgment stage.  *Id.* at 255.  "[T]he determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case."  *Id.*  Where, for example, the

4

"'clear and convincing' evidence requirement applies, the trial judge's summary judgment inquiry as to whether a genuine issue exists will be whether the evidence presented is such that a jury applying that evidentiary standard could reasonably find for either the plaintiff or defendant." *Id.*

The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323 (quotation marks omitted). The burden then shifts to the non-movant to "present specific evidence, beyond 'mere denials or allegations [that] . . . raise a genuine issue for trial.'" *Farver v. McCarthy*, 931 F.3d 808, 811 (8th Cir. 2019) (quoting *Wingate v. Gage Cnty. Sch. Dist., No. 34*, 528 F.3d 1074, 1079 (8th Cir. 2008)).

"In order to survive a motion for summary judgment, the non-moving party must be able to show sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy." *Binkley v. Entergy Operations, Inc.*, 602 F.3d 928, 931 (8th Cir. 2010) (quotation marks omitted) (quoting *Godfrey v. Pulitzer Pub. Co.*, 276 F.3d 405, 412 (8th Cir. 2002)). The evidence relied upon in support or opposition to the motion must be admissible at trial. *See Churchill Business Credit, Inc. v. Pacific Mut. Door Co.*, 49 F.3d 1334, 1337 (8th Cir. 1995) ("A party opposing a motion for summary judgment 'must show that admissible evidence will be available at trial to establish a genuine issue of material fact.'") (quoting *Fin. Timing Publ. v. Compugraphic Corp.*, 893 F.2d 936, 942 (8th Cir. 1990)); *Banks v. Deere*, 829 F.3d 661, 667 (8th Cir. 2016) ("inadmissible hearsay cannot be used to avoid summary judgment") (cleaned up) (quoting *Cherry v. Ritenour Sch. Dist.*, 361 F.3d 474, 480 (8th Cir. 2004)). The Court "must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party." *Brand v. National Union Fire Co. of Pittsburgh, Pa.*, 934 F.3d 799, 802 (8th Cir. 2019) (citation omitted). But the Court should not "resort to speculation." *Hill v. Southwestern Energy Co.*, 858 F.3d 481, 487 (8th Cir. 2017) (quotation marks and citation omitted).

## DISCUSSION

**I.     Count I:  Violation of Johnson's Right to Free Speech**

Count I asserts a cause of action under 42 U.S.C. § 1983 against the City and individual defendants for violation of Johnson's First Amendment right to free speech. Specifically, she claims that she was fired in retaliation for engaging in constitutionally protected speech.  To establish a prima facie case for First Amendment retaliation under § 1983, a plaintiff must show that: "'(1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) a causal connection existed between the two.'" *Wagner v. Campbell*, 779 F.3d 761, 766 (8th Cir. 2015) (quoting *Butler v. Crittenden Cnty., Ark.*, 708 F.3d 1044, 1050-51 (8th Cir. 2013)).[5]

### A. Plaintiff fails to establish § 1983 liability against the individual defendants because her allegedly offensive speech was not protected.

"The Free Speech Clause of the First Amendment constrains governmental actors and protects private actors." *Manhattan Community Access Corp. v. Halleck*, 139 S. Ct. 1921, 1926 (2019).  The First Amendment does not constrain private employers, and a "government entity has broader discretion to restrict speech when it acts in its role as employer[.]" *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006).  "Government employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services." *Id.*  Therefore, "[w]hen a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom." *Id.*  "[W]hile the First Amendment invests public employees with certain rights, it does not empower them to 'constitutionalize the employee grievance.'" *Id.* at 420 (quoting *Connick v. Myers*, 461 U.S. 138, 154 (1983)).  Thus, to prevail on her First Amendment claim, Johnson must demonstrate that the offending speech was protected—i.e., that it was not something the City had a right to restrict as her employer.

To show that she engaged in protected activity for the purposes of a free speech retaliation claim, a public employee must show that: "(1) [she] spoke as a citizen, and not

---

[5] Because Defendants have demonstrated that they are entitled judgment as a matter of law as to the first element of the prima facie case for a First Amendment retaliation claim, the Court does not reach the second or third.  *See Wagner*, 779 F.3d at 766.

as an employee, on a matter of public concern, and (2) [her] right to free speech outweighs the [City's] interest in promoting the efficiency of its public services." *Davenport v. Univ. of Ark. Bd. of Trustees*, 553 F.3d 1110, 1113 (8th Cir. 2009) (citation omitted). Defendants argue that the undisputed facts show that Johnson spoke as an employee, not a private citizen, and thus her speech is not protected by the First Amendment. Doc. 88 at 4-10. The Court agrees.[6]

"[W]hen public employees make statements *pursuant to* their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421 (emphasis added). Whether the employee expresses her views "inside [the] office, rather than publicly, is not dispositive." *Id.* at 420. Nor does it matter whether the speech concerns "the subject matter" of her employment. *Id.* at 421. Teachers, for example, may speak about how school funds should be allotted without fear of reprisal. *Pickering v. Bd. of Ed. of Tp. High Sch. Dist. 205, Will Cty., Il*, 391 U.S. 563, 572 (1968). Instead, a public employee's speech is pursuant to her official duties, and thus not protected by the First Amendment, if it "owes its existence to" her professional responsibilities, *Garcetti*, 547 U.S. at 421; *accord McGee v. Pub. Water Supply Dist. No. 2*, 471 F.3d 918, 921 (8th Cir. 2006); "if it is part-and-parcel of [her] concerns about [her] ability to properly execute [her] duties,'" *Groenewold v. Kelley*, 888 F.3d 365, 371 (8th Cir. 2018) (quotation marks and citation omitted); or if it "is part of what [she] was employed to do." *Garcetti*, 547 U.S. at 421.

Speech may be pursuant to an employee's official job duties "even though it is not required by, or included in, the employee's job description, or in response to a request by the employer." *Lyons v. Vaught*, 875 F.3d 1168, 1174 (8th Cir. 2017) (citation omitted). "Under *Garcetti*, 'a public employee speaks without First Amendment protection when [s]he reports conduct that interferes with [her] job responsibilities, even if the report is made outside [her] chain of command." *Id*. at 1175 (citing *Winder v. Erste*, 566 F.3d 209, 215 (D.C. Cir. 2009)). These restrictions "simply reflect[ ] the exercise of employer control over what the employer itself has commissioned or created." *Garcetti*, 547 U.S. at 422.

---

[6] Because the Court finds that Defendant is entitled to summary judgment on the first element of the *Davenport* standard, it does not reach the second. *See* 553 F.3d at 1113.

7

Courts should not engage in "judicial oversight of communications between and among government employees and their superiors in the course of official business." *Id.* "Employers have heightened interests in controlling speech made by an employee in his or her professional capacity," because "[o]fficial communications have official consequences[.]" *Id.* The proper judicial inquiry is a "practical one," not controlled or limited by "[f]ormal job descriptions." *Garcetti,* 547 U.S. at 424.

Count I alleges that Johnson was terminated for speech related to "the improper payment of the City Court Clerk," and "violations of Missouri Sunshine Law." Doc. 26 ¶ 26. The Complaint further specifies that Johnson's "refusal to alter public meeting minutes to delete . . . comments, complaints and concerns was a motivating factor in the Defendants' decision to fire her." *Id.* ¶ 27. The "crux of [her] § 1983 claim is that she was fired for placing in the proposed July open meeting minutes the Wage Law violation discussion regarding Tracy Fisher, for placing the DeGrant complaints in the August 2018 Board proposed minutes, and the fact she consulted outside authorities as to the correct way to prepare those proposed minutes after an alderman requested changes." Doc. 95 (Johnson's Opposition) at 10.

Johnson thus imputes her firing to one or more of four communications: (1) her relation to the Board that Court Clerk Tracy Fisher was being underpaid; (2) her inclusion of the DeGrant complaint in the proposed August 21st Board meeting minutes; (3) her opposition to requests to alter the July 31st and August 21st minutes; and (4) her communications with the Missouri Finance Officers Association and Missouri Municipal League about making such changes. The Court will address each in turn.

### (1) Reporting Fisher's Undercompensation

Johnson alleges that she was terminated because she reported Tracy Fisher's underpayment to the Board. In response to Defendants' Motion to Dismiss, the Court held that Johnson did "not successfully claim First Amendment protection for that speech under *Garcetti,*" because she failed to allege that reporting Ms. Fisher's underpayment fell outside her duties as a City employee. Doc. 66 at 9-10. Discovery has yielded no evidence that reporting Ms. Fisher's underpayment did fall outside Johnson's duties. Therefore, Johnson's claim fails again here.

8

Johnson's Complaint alleged that she reported Fisher's underpayment to the Board in a closed meeting. Doc. 26 ¶ 14 ("on or about , July 31, 2018, the City Board . . . went into closed session and conducted official business . . ."); *id.* ¶ 15 (alleging that the discussion occurred during the "unnoticed 'closed' meeting of July 31 . . ."). Johnson claims in her Opposition, however, that the meeting was public. *See* Doc. 95 at 3, 4, 7, 8 (referring to "public complaints" at "open meeting[s]"). Whether Johnson expressed her views about Fisher's compensation publicly or privately is not dispositive of whether it qualifies as the speech of a private citizen or an employee. *Garcetti*, 547 U.S. at 420. What matters is whether Johnson's speech about Ms. Fisher's wages was pursuant to her official duties. *Id.* Johnson's duties included general accounting, payroll, and processing timesheets for City employees. Doc. 102 ¶ 8. Discussing a City employee's compensation with the Board was thus "part-and-parcel of [her] concerns about [her] ability to properly execute [her] duties," *Groenewold*, 888 F.3d at 371, and "part of what [she] was employed to do," *Garcetti*, 547 U.S. at 421. Thus, nothing in Johnson's Opposition undermines the Court's earlier assessment that her speech about Ms. Fisher's wages was pursuant to her official duties and therefore not protected by the First Amendment.

### *(2) Recording the DeGrant Complaint*

Johnson claims that she was terminated because she recorded Kevin DeGrant's complaint in the August 21st minutes. Doc. 26 ¶¶ 19, 20; Doc. 95 at 10. Specifically, she claims to have been retaliated against "because she recorded in the proposed August meeting minutes the complaint and discussion of threats made by Alderman McKinney against a citizen, Kevin DeGrant[.]" Doc. 95 at 4. One of Johnson's duties was to take notes during and keep proper records of Board meetings. Her speech is not protected if it "is part of what [she] was employed to do." *Garcetti*, 547 U.S. at 421. Thus, to the extent that Johnson claims she was terminated for transcribing DeGrant's complaints into the August 21st minutes, her First Amendment retaliation claim fails.

### *(3) Alteration of the Board Minutes*

Johnson also claims that she was terminated because she expressed opposition to requests by alderpersons to alter Board meeting minutes. Specifically, she opposed Alderman G. McKinney's instruction to remove DeGrant's complaint from the August 21st minutes and Alderwoman Schrum's instruction to remove the discussion of Fisher's

9

compensation from the July 31st minutes, which she believed to be Sunshine Law violations. Doc. 95 at 7. Johnson emphasizes that her opposition was public. She claims to have "[spoken] out in public meetings and elsewhere," Doc. 95 at 7, but she points to nothing in the record that supports the claim, and the undisputed facts are to the contrary. *See* Doc. 102 ¶¶ 17, 23, 28.

Johnson's attempts to turn her speech into public speech would make no difference anyway. As noted above, whether she expressed her views publicly or privately is not dispositive of whether they are protected by the First Amendment. *Garcetti*, 547 U.S. at 421. The controlling factor is whether her expressions were made *pursuant to* her professional duties. *Id.* Disputing the proper content of Board meeting minutes and how minutes should be amended falls squarely within Johnson's official duties of keeping a journal and proper records of the Board's meetings. Johnson's speech is thus unprotected for the same reasons Ceballos's was in *Garcetti*. *See* 547 U.S. at 421 ("[T]he fact that Ceballos spoke as a prosecutor fulfilling a responsibility to advise his supervisor about how best to proceed with a pending case—distinguishes Ceballos' case from those in which the First Amendment provides protection against discipline. . . . Ceballos wrote his disposition memo because that is part of what he . . . was employed to do.").

*Lindsey v. City of Orrick, Mo.*, is also instructive. 491 F.3d 892 (8th Cir. 2007). There, the city's public works director, whose duties included park, water, sewer, and street maintenance, complained at city council meetings that the city was violating the Sunshine Law. *Lindsey*, 491 F.3d at 895-96. The Court held that Lindsey's speech was made as a citizen, and thus protected, because "there [was] no evidence Lindsey's job duties even arguably included sunshine law compliance." *Id.* at 898. Here, Johnson testified that she was specifically trained on Sunshine Law compliance and that her duties included Sunshine Law compliance. *See* Doc. 89-2 at 35:13-22 ("So whenever I was first hired with the City of Leadington, they sent me to a two-day training . . . with the Missouri Municipal League . . . . [which] covered, you know, many different topics from finance to Sunshine Law[.]"); *id.* at 36:12-21 ("[D]uring the course of that [MML] training, I was also given . . . the State of Missouri manual concerning Sunshine Law."); *id.* at 42:17-21 ("[A]s the city clerk, I kept record of all of those [meeting minutes] so if someone did come in with a Sunshine request or something to that effect, I would have those minutes readily available."). Thus, unlike

10

Lindsey and like Ceballos, Johnson's speech was speaking pursuant to her professional duties when she opposed amendments to Board meeting minutes on the basis of the Sunshine Law.

*(4) Missouri Finance Officers Association and Missouri Municipal League*

The Complaint alleges that Johnson "secured advice" about G. McKinney and Schrum's demands to alter the minutes from the Missouri Finance Officers Association and Missouri Municipal League.  Doc. 26 ¶ 16.  Accordingly, in denying Defendants' Motion to Dismiss, this Court found that Johnson had stated a claim that her speech about possible violations of Missouri's Sunshine Law was "made in her capacity as a private citizen," because she had alleged that "reporting those concerns to external organizations," Doc. 66 at 9—which she described as "public speech voicing her opposition that the City and the individual Alderman were violating the Sunshine Law," Doc. 26 ¶ 16—"[was] 'not in the course of her regular and normal course of employment.'"  Doc. 66 at 9 (quoting Doc. 26 ¶ 16).  In her Opposition to the Motion for Summary Judgment, Johnson reiterates her claim to have "*contacted* both [organizations] *with her concerns* about the way the Board was altering the minutes . . . ."  Doc. 95 at 8 (emphasis added).  But with the benefit of discovery, Johnson has made no showing that the nature of those contacts was anything like "public speech voicing her opposition" to violations of the Sunshine Law, nor that it was outside her "regular and normal course of employment."  Doc. 26 ¶ 16.

In her deposition, Johnson admitted that she never contacted the Missouri Finance Officers Association; rather, she referred to the Association's manual for guidance.  Doc. 102 ¶ 17.[7]  Johnson has offered no legal basis for the Court to hold that her reference to a manual qualifies as speech.

Johnson also repeatedly denied "complaining" to the Missouri Municipal League that she was being asked to do something illegal.  Doc. 89-2 at 87:8-88:1.  Instead, she testified

---

[7]  Q:  Did you complain to the Finance Officers Association?
    A:  Did I complain to them?  No.  I just referenced my manual.

Doc. 89-2 at 87:4-7.

   Q:  You never sought council from the Finance Officers Association regarding this issue?
    A:  No.

*Id.* at 180:24-109:1.

11

that she sought "guidance on how I needed to handle this." *Id.*; *see also* Doc. 102 ¶ 17.[8] While voicing to external organizations her opposition to illegal conduct might have fallen outside of the normal course of Johnson's employment, soliciting advice about how to handle requested amendments to Board meeting minutes fell squarely within it. *See* Doc. 89-2 at 42:17-21 (Johnson's testimony that the city clerk's responsibilities included preparing minutes and keeping records of Board meetings).

Speech may be pursuant to an employee's official duties even if it is not required by the employer or included in the employee's job description. *Lyons*, 875 F.3d at 1174. Keeping proper record of Board meeting minutes was "part of what [Johnson] was employed to do." *Garcetti*, 547 U.S. at 421. Thus, on a "practical" inquiry, *id.* at 424, it is readily apparent that contacting the Municipal League for "guidance" about "how [she] needed to handle" requested amendments to Board meeting minutes was "part-and-parcel of [Johnson's] concerns about [her] ability to properly execute [her] duties," *Groenewold*, 888 F.3d at 371. Therefore, Johnson's communications with the Missouri Municipal League were not outside the normal course of her employment, and there is no basis to hold that those communications were protected speech.

Viewing the record in the light most favorable to Johnson and drawing all reasonable inferences in her favor, *Brand*, 934 F.3d at 802, the Court finds that Johnson's speech fails to satisfy *Garcetti* and the first prong of *Davenport*, because none of the allegedly offensive speech was that of a private citizen. *Garcetti*, 547 U.S. at 421; *Davenport*,

---

[8]  Q: Did you complain to the Missouri Municipal League?
A: It was not a complaint. It was guidance on how I needed to handle this.
Q: Okay. So you did not—you never called the [MML] and said, "My Alder people are asking me to do something illegal, what do I do?
A: No, but I did mention that to Mark Bishop, the city attorney.
. . .
Q: You never talked to the MML and asked them—or told them, "You know, my alder people are telling me to do something illegal, what do I do?"
A: No.

Doc. 89-2 at 87:8-88:1.

Q: You never spoke to the Missouri Municipal League about this incident, did you?
A: Not that I'm aware of. Not that I recall.

*Id.* at 108:21-23.

553 F.3d at 1113.  Accordingly, the individual Defendants are entitled to judgment as a matter of law on Count I.[9]

### B.  Plaintiff fails to establish § 1983 liability against the City.

Count I also includes allegations on the basis of which the Court found that Johnson had successfully stated a claim for § 1983 liability against the City under *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690-94 (1978).  *See* Doc. 26 ¶¶ 23, 33, 34; Doc. 66 at 12-14.  Specifically, the Court found that by "alleg[ing] that a deliberate choice by City officials with final policymaking authority deprived her of a constitutional right," Johnson had successfully stated a § 1983 claim against the City under *Monell*.  Doc. 66 at 14.

The Eighth Circuit "has consistently recognized the general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim."  *Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 674 (8th Cir. 2007) (quoting *McCoy v. City of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005)) (internal quotation marks omitted).  "[T]here 'need not be a finding that a municipal employee is liable in his or her individual capacity.'"  *Webb v. City of Maplewood*, 889 F.3d 483, 488 (8th Cir. 2018) (quoting *Moyle v. Anderson*, 571 F.3d 814, 818 (8th Cir. 2009)).  But there must at least "be an unconstitutional *act* by a municipal employee."  *Id*. at 488 (quoting *Russell v. Hennepin Cnty.*, 420 F.3d 841, 846 (8th Cir. 2005)) (emphasis added).  Having found there was no predicate unconstitutional act here, the Court has no basis for holding the City liable under § 1983.  Therefore, the City is also entitled to summary judgment as to Count I.

## II.  Count II:  Conspiracy to Violate Johnson's Right to Free Speech

Count II alleges that the "Defendants, acting under color of state law, conspired together and amongst themselves and as a result reached a mutual understanding to protect McKinney and Schrum from public scrutiny by firing Johnson because of her

---

[9] After contesting the merits of Plaintiff's First Amendment claim, Defendants also argue that they are entitled to qualified immunity.  *See* Doc. 88 at 12-15.  "To overcome the defense of qualified immunity, a plaintiff must show: (1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation."  *Howard v. Kansas City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009).  Because the Court finds that, on the facts viewed in the light most favorable to Plaintiff, she has not demonstrated a deprivation of her First Amendment rights, it follows that the individual Defendants are entitled to qualified immunity as to her First Amendment claim.

13

constitutionally protected speech." Doc. 26 ¶ 39. To prevail on a § 1983 conspiracy claim, Johnson must establish: (1) that Defendants conspired with one another to deprive her of a constitutional right; (2) that at least one of them engaged in an overt act in furtherance of the conspiracy; (3) that the overt act injured her; and (4) the occurrence of an actual deprivation of a constitutional right or privilege. *White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008) (citing *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999)). As set forth above, Johnson has failed to establish that she suffered the deprivation of a constitutional right; therefore, her § 1983 conspiracy claim also fails.

### III.     Count IV: Violation of Missouri Whistleblower Statute

Count IV alleges a violation of the Missouri Whistleblower Statute, Mo. Rev. Stat. § 105.055, against the City. Section 105.055.3 states:

> No supervisor or appointing authority of any public employer shall:
>
> (1) Prohibit a public employee from or take any disciplinary action whatsoever against a public employee . . . for the disclosure of information which the employee reasonably believes evidences:
>
> >   (a) A violation of any law, rule or regulation; or
> >
> >   (b) Mismanagement . . . abuse of authority, violation of policy . . . [or] breaches of professional ethical canons, . . . if the disclosure is not specifically prohibited by law[.]

When a public employee brings a whistleblower action, she must "show by clear and convincing evidence that . . . she . . . has reported or was about to report, verbally or in writing, a prohibited activity or a suspected prohibited activity." Mo. Rev. Stat. § 105.055.7(3). If the employee makes such a showing, the burden shifts to the employer "to demonstrate that the disciplinary action was not the result of such a report." *Id.*

Count IV alleges that Johnson was terminated "after she called attention to authorities that the Defendant City was not paying an employee for the correct amount of hours worked . . . in violation of the Fair Labor Standards Act . . . ." Doc. 26 ¶ 52. Count IV further alleges that Johnson was terminated after she "insisted upon a correct and accurate transcription of the Minutes pertaining to official city business." *Id.* In her Opposition, Johnson claims that she "brought to the attention of not only the [Board], but also to [Bishop], and the Police Chief and others that the City had failed to pay the actual hours contained on the Court Clerk's timesheets." Doc. 95 at 22. Johnson further argues that her

14

"disclosure of the violation of the Wage and Hour Law lead [sic] to a retaliatory action against her," *id.* at 23, and that she "was not terminated for her work performance but because she spoke out and ran afoul of the 'good ole boy system' of the City of Leadington." *Id.* at 24.

"The plain meaning of 'disclosure' under § 105.055 is the exposure or revelation of something previously unknown." *See Mayfield v. Mo. House of Representatives*, 2021 WL 2228061, at *4 (W.D. Mo. June 2, 2021) (citing *Hudson v. O'Brien*, 449 S.W.3d 87, 92 (Mo. App. 2014)). Statements made to someone who was already aware of the information do not qualify as "disclosure" under § 105.055. *Id.* But "§ 105.055 contains no requirement as to whom disclosure must be made." *Hudson*, 449 S.W.3d at 93. Disclosure may occur even if the statements were made only to supervisors, as long as the information was previously unknown. *Id.*

Johnson alleges that she brought Fisher's underpayment to the attention of "authorities," Doc. 26 ¶ 52; however, she cites no evidence to support that claim. She admits that she did not report this issue to Missouri Wage and Law. Doc. 102 ¶ 23. She admits that her contact with the Missouri Municipal League was to seek guidance regarding the amendment of Board meeting minutes. *See supra* note 8. And Johnson did not "disclose," within the meaning of § 105.055, Fisher's underpayment to the Board at the July 31st meeting. Information does not qualify as a "disclosure" if it was previously readily available to the individuals to which it was disclosed, even if those individuals had totally disregarded and "inexplicably chose not to abide by it." *Mayfield*, 2021 WL 2228061, at *4. According to Johnson's own testimony, the Board already "knew about" Fisher working more hours than she was paid for. *See* Doc. 89-2 at 91:8-19.[10] City Clerk Debbie Eggers also claimed to have been aware and to have documented some of Fisher's additional hours

---

[10] A: . . . Tracy was making a motion to change from a part-time employee to a full-time employee and I let it be known to the council and all present that Tracy had been pulling full-time hours, but had only been receiving part-time pay.

Q: Was this the first time that the issue of her having this many hours was presented to the aldermen in a formal forum?

A: In a formal forum yes. **They knew about it**, but in a formal setting, that was the first time that I'm aware of.

Doc. 89-2 at 91:8-19 (emphasis added).

15

on her timesheets. *See* Doc. 89-3 at 37:25-38:4, 38:21-23. And Eggers testified that Fisher's hours had been discussed with the Board and Bishop at meetings even before the July 31st meeting. *See* Doc. 89-3 at 38:24-39:9, 39:17-25.

There is also insufficient evidence to find that Johnson disclosed Fisher's underpayment to any member of the public. Where a heightened evidentiary standard applies to a claim, a trial court is required to apply that standard at summary judgment. *Anderson*, 477 U.S. at 255. Count III requires Johnson to demonstrate by "clear and convincing evidence" that she made a disclosure. Mo. Rev. Stat. § 105.055.7(3). Under Missouri law, "[e]vidence is clear and convincing if it instantly tilts the scales in the affirmative when weighed against the opposition, such that the fact finder's mind is left with an abiding conviction that the evidence is true." *Grant v. Sears*, 379 S.W.3d 905, 915 (Mo. App. 2012) (cleaned up) (citation omitted).

As noted in Count I, Johnson's Complaint is at odds with her Opposition with respect to whether the July 31st meeting was open or closed. *See supra* at 8-9. In the Complaint, Johnson twice alleged that the meeting was closed. Doc. 26 ¶¶ 14, 15. She also alleged that the minutes were "changed, after the fact, to an open session on the advice of counsel, Mark Bishop." Doc. 26 ¶ 16. On summary judgment, she claims that she "raised concerns in a *public* meeting," Doc. 95 at 8, and points to Court Clerk Fisher's affidavit as support. Doc. 94-9 ¶ 9 ("At the July 31, 2018 City of Leadington public meeting, which I attended . . ."). An early draft of the minutes—written by Johnson—describes the meeting as "closed." *See* Doc. 89-4. A later draft states, "since this meeting was never voted to go into closed session, this will be filed in open minutes per advice of attorney Mark Bishop." Doc. 89-5. Bishop's testimony clarified that, even though the Board "noticed up a closed meeting," "because they never voted to go into closed session," it should not have been considered a closed session. Doc. 89-9 at 38:17-39:4. The revision from "closed" to "open" thus appears to have been based on a procedural technicality not a factual mistake. Regardless of whether the meeting was technically open or closed, nothing in the record suggests that the meeting was *actually* open to the public—that is, that any members of the public were present. Missouri law places the burden on Johnson to show, by clear and convincing evidence, that she "disclosed" information. She has produced no evidence, let alone clear

16

and convincing evidence, that she disclosed Fisher's undercompensation to members of the public.

Based on the evidence, Johnson's communications about Fisher at the July 31st meeting did not expose or reveal anything previously unknown. Thus, they do not qualify as a "disclosure." *Mayfield*, 2021 WL 2228061, at *4; *Hudson*, 449 S.W.3d at 92.

Johnson also cites her insistence on an accurate transcription of meeting minutes as a basis for her whistleblowing claim. Assuming that such insistence could be called a "disclosure" in any sense, it still would not meet the statutory definition, because the Board members were all at the meetings and thus would have been aware of what happened and whether or not the minutes were accurate. Thus, Johnson's insistence on accurate minutes does not qualify as a disclosure. *Mayfield*, 2021 WL 2228061, at *4.

Viewing the record in the light most favorable to Johnson and drawing all reasonable inferences in her favor, *Brand*, 934 F.3d at 802, none of Johnson's allegedly offensive communications was a "disclosure" under Mo. Rev. Stat. § 105.055.[11] Therefore, her whistleblower claim fails as a matter of law.

## MOTION FOR LEAVE TO FILE SUR-REPLY

Plaintiff seeks to file sur-replies with respect to both the Motion for Summary Judgment and the Statement of Uncontroverted Material Facts. Doc. 106. "Sur-replies are largely disfavored in federal court." *Fuller v. Lion Oil Trading & Transp., LLC*, 2020 WL 3057392, at *6 (W.D. Ark. June 9, 2020). While the Court has discretion to permit a sur-reply where justice so requires, it does not allow them as a matter of course. *Id.* In particular, a "surreply is unwarranted where the reply responds to the arguments in the resistance and does not raise new arguments." *Fleshner v. Tiedt*, 2019 WL 271619, at *2 (N.D. Iowa Jan. 18, 2019).

Plaintiff does not point to any novel argument raised in Defendant's Reply, nor to any other consideration that might justify a sur-reply in this matter. Therefore, the Motion

---

[11] Accordingly, the Court does not reach whether the information related to violations of law or improper conduct, or whether her termination was the result of any such communication. *See* Mo. Rev. Stat. § 105.055.

for Leave to File Sur-Reply is denied.  The Court did not consider Plaintiff's proposed sur-replies in its analysis of the Motion for Summary Judgment.

### MOTION TO STRIKE SUMMARY JUDGMENT EXHIBITS 7 AND 8

Defendants move to strike two exhibits to Plaintiff's Response to Defendants' Statement of Uncontroverted Material Facts:  the affidavits of Kevin DeGrant and Tracy Fisher.  Docs. 99, 100 (objecting to Docs. 94-8 & 94-9).  As consideration of DeGrant's affidavit was not necessary for determining the merits of Defendants' Motion for Summary Judgment, the Motion to Strike his affidavit is moot.  *See Stewart v. Pro. Computer Centers, Inc.*, 148 F.3d 937, 940 n.3 (8th Cir. 1998) (motion to strike moot where materials had not been relied on).  Of Ms. Fisher's affidavit, the Court considered a single statement:  her description of the July 31, 2018, Board meeting, which she claims to have attended, as "public."  Doc. 94-9 ¶ 9.  Defendants point to no reason to strike that testimony.  *See* Doc. 100 at 8-9; Doc. 108 at 2.  As to that statement only, then, the Motion to Strike is denied; in all other respects, it is denied as moot.

### CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Leave to File Sur-Reply (Doc. 106) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike Summary Judgment Exhibits 7 and 8 (Doc. 99) is **DENIED IN PART** and **DENIED AS MOOT IN PART**.

**IT IS FINALLY ORDERED** that Defendants' Motion for Summary Judgment (Doc. 87) is **GRANTED**.  A separate Judgment shall accompany this Memorandum and Order.

Dated this 20th day of January, 2022.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE